Case No. 24-10436

## In the
## United States Court of Appeals
## for the Fifth Circuit

_____

UNITED STATES OF AMERICA,

PLAINTIFF - APPELLEE

V.

ACACEDRIC RASHOD WARE,

DEFENDANT - APPELLANT

_____

On Appeal from the United States District
Court for the Northern District of Texas,
Dallas Division No. 21-cv-1366-D-BH

_____

**APPELLANT'S BRIEF**

_____

Jonathan D. Landers
1018 Preston St., Fl. 8
Houston, TX 77002
Tel: (713) 685-5000
Jlanders.law@gmail.com

Attorney for Mr. Ware

## CERTIFICATE OF INTERESTED PERSONS

(1) *United States of America v. Acacedric Rashad Ware*, Cause no. 24-10436;

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal. No corporate disclosure statement is required in this case. Fed. R. App. P. 26.1. No known people have a financial interest in the outcome of this case. Fifth Cir. R. 28.2. The Plaintiff/Appellee was represented by Brian W. McKay, and is now represented by Stephen Gilstrap, Assistant U.S. Attorneys. Defendant/Appellant was previously represented by Cody L. Skipper, James P. Whalen, Reed W. Prospere, or Toby L. Shook during the pendency of his criminal case. Undersigned counsel also represented the Defendant/Appellant before the District Court.

/s/ Jonathan Landers

_____

Date: April 16, 2025          Jonathan Landers

i

## STATEMENT REGARDING ORAL ARGUMENT

The Supreme Court has held that the Due Process Clause and Sixth Amendment are violated when a defendant's attorney labors under an actual conflict of interest that adversely effects his client's case.  In this case, Mr. Ware's defense counsel simultaneously represented Mr. Ware and another man, Charles Van Zandt, who were both charged in separate federal drug cases.  He was representing both men ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████ Although counsel withdrew from Mr. Ware's case prior to sentencing, he continued to represent Van Zandt, ████████████████████████████████████████ ████████████████████████████ This case involves the application of the conflict of interest framework to the unique facts involved herein, and oral argument will assist this Court in the decisional process.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................ i

Statement Regarding Oral Argument ...................................... ii

Table of Authorities ............................................................... v

Jurisdictional Statement .......................................................... 1

Issues Presented for Review .................................................... 1

Statement of the Case and Facts ............................................. 1

I.       Procedural History ..................................................... 1

II.      The Facts ................................................................... 4

         A.     After his arrest, ████████████████████ ....4

         B.     A conflict of interest arises for Mr. Ware's attorney, and the result is
                that Mr. Ware loses his acceptance of responsibility............................ 7

         C.     The sentencing hearing – ████████████████████
                ████████████████████████████
                ████████████ ..................................................... 13

         D.     Strong evidence shows that Mr. Van Zandt ████████████
                ████████████████ ....................................... 19

         E.     District Court's Ruling. ......................................... 20

Summary of the Argument........................................................ 21

Standard of Review ................................................................. 21

Argument................................................................................ 22

iii

I.     Mr. Ware's right to Due Process and right to counsel were violated because his attorney labored under an actual conflict of interest that adversely impacted his case. ........................................................................22

    A.    The Law............................................................................22

    B.    The District Court's assumption that an actual conflict existed is correct. ..........................................................................25

    C.    Mr. Ware was adversely effected by his counsel's conflict...............29

    D.    The Remedy: Mr. Ware should be sentenced free from the effects of the conflict. .........................................................................39

II.    The District Court abused its discretion by denying the motion without holding a hearing. .......................................................................41

Prayer for Relief..............................................................................43

Certificate of Service ........................................................................44

Certificate of Compliance ..................................................................44

## TABLE OF AUTHORITIES

**Cases**

*Barbee v. Davis*, 660 Fed. Appx. 293 (5th Cir. 2016)...................................... 29, 30

*Baty v. Balkcom,* 661 F.2d 391 (5th Cir. 1981) ......................................... 36-37

*Beets v. Collins,* 65 F.3d 1258 (5th Cir. 1995) .........................................24

*Burger v. Kemp*, 483 U.S. 776 (1987) .......................................................22

*Carty v. Thaler*, 583 F.3d 244 (5th Cir. 2009)..........................................21

*Cuyler v. Sullivan*, 446 U.S. 336 (1980)........................................ 22, 23, 24, 36, 43

*Glasser v. United States*, 315 U.S. 60 (1942) ................................... 22, 24

*Guidry v. Lumpkin,* 2 F.4th 472 (5th Cir. 2021) ......................................32

*Holloway v. Arkansas*, 435 U.S. 475 (1978) .................................. 22, 25, 30, 36, 37

*Lafler v. Cooper*, 566 U.S. 156 (2012) ....................................................40

*Mickens v. Taylor*, 535 U.S. 162 (2002)...................................................22

*Nealy v. Cabana*, 782 F.2d 1362 (5th Cir. 1986)......................................25

*Perillo v. Johnson,* 205 F.3d 775 (5th Cir. 2000) ........................... 23, 24, 26, 30, 38

*Sanders v. Ratelle,* 21 F.3d 1446 (9th Cir. 1994) .....................................38

*Stephens v. United States*, 595 F.2d 1066 (5th Cir. 1979).......................30

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................. 22, 23, 24, 30

*United States v. Abner*, 825 F.2d 835 (5th Cir. 1987) .............................31

v

*United States v. Alvarez*, 580 F.2d 1251 (5th Cir. 1978)...................................... 30-31

*United States v. Bartholomew,* 974 F.2d 39 (5th Cir.1992) ....................................42

*United States v. Cavitt*, 550 F.3d 430 (5th Cir. 2008) ...................................... 22, 41

*United States v. Edwards,* 442 F.3d 258 (5th Cir. 2006)......................................42

*United States v. Hughes*, 817 F.2d 268 (5th Cir. 1987)............................................30

*United States v. Infante,* 404 F.3d 376 (5th Cir. 2005)............................................37

*United States v. Martinez*, 630 F.2d 361 (5th Cir. 1980)..........................................30

*United States v. Reed,* 719 F.3d 369 (5th Cir. 2013).............................................42

*United States v. Sheperd*, 27 F.4th 1075 (5th Cir. 2022).... 21, 24, 33, 34, 35, 36, 42

*United States v. Sheperd*, 44 F.4th 305 (5th Cir. 2022)................................... 33, 40

*United States v. Williams*, 372 F.3d 96 (2d Cir. 2004).............................. 30, 39, 41

*Wood v. Georgia*, 450 U.S. 261 (1981) ................................................................22

**Statutes**

21 U.S.C. § 846 ......................................................................................................1

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 2253 ....................................................................................................1

28 U.S.C. § 2254 (d) ............................................................................................32

28 U.S.C. § 2255 ...................................................................... 22, 42, 43

U.S.S.G. § 3E1.1 ........................................................................... 18, 41

U.S.S.G. § 5K1.1.....................................................................................41

**Other Authorities**

ABA Model Rule of Professional Conduct 1.7 .......................................................28

ABA Model Rule of Professional Conduct 1.9 ...................................... 1, 6, 10, 27

Texas Disciplinary Rule of Professional Conduct 1.06(b)(2) .................................27

Texas Disciplinary Rule of Professional Conduct 1.06(d) ....................................28

Texas Disciplinary Rule of Professional Conduct 1.09.........................................27

Texas Disciplinary Rule of Professional Conduct 1.09(a)(1–3)............................27

## JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction under 28 U.S.C. § 1291, 28 U.S.C. § 2253 (a), and 28 U.S.C. § 2255 (d).

## ISSUES PRESENTED FOR REVIEW

I.   Mr. Ware's right to Due Process and right to counsel were violated because his attorney labored under an actual conflict of interest that adversely impacted his case.

II.  The District Court abused its discretion by denying the motion without holding a hearing.

## STATEMENT OF THE CASE AND FACTS

### I. PROCEDURAL HISTORY[1]

Mr. Ware was charged by indictment with two counts of conspiring to distribute a controlled substance in violation of 21 U.S.C. § 846 on May 20, 2015. ROA.507-516.  He was represented by Attorney Reed Prospere.  ROA.529.  On January 29, 2016, Mr. Ware, represented by Mr. Prospere, pleaded guilty to both counts of the indictment.  ROA.722-74.  On April 18, 2018, Mr. Prospere was allowed to withdraw as attorney of record, and attorneys Toby Shook and Cody Lee Skipper signed on as attorneys of record April 23, 2018.  ROA.637-644.  On June

---

[1] The underlying criminal case number was 3:15-cr-00226-D.  Documents from the underlying criminal case are included in the record on appeal.

11, 2019, Mr. Ware was sentenced to 235 months on each count to run concurrently, 3 years of supervised release, and required to pay the mandatory assessment. ROA.662-667.  Notice of Appeal was timely filed on June 20, 2019.  ROA.674.

On appeal, Mr. Ware was represented by Attorney James Patrick Whalen.  On February 3, 2020, an *Anders* brief was filed on Mr. Ware's behalf.  On June 11, 2020, this Court's opinion and judgment were entered.  ROA.160.

On June 10, 2021, Mr. Ware filed his Motion to vacate, set aside, or correct his sentence.  ROA.7-18.  The motion included three claims for relief: (1) an actual conflict of interest requiring a new sentencing hearing existed because Mr. Ware's attorney simultaneously represented Charles Van Zandt ██████████████ ████████████████████████████████████████████████████ ██████████████████████ (2) Sentencing counsel was ineffectiveness for failing to object to the introduction of his illegally obtained custodial statement at sentencing; and (3) due process was violated when Mr. Van Zandt testified falsely ████████████████████████████████████████████████████████

███████████████████████████████████████████████     *Id.*[2]

Mr. Ware also filed a motion for discovery.  ROA.300-304.  Specifically, he requested discovery of the following items: (1) three documents from Mr. Van Zandt's criminal case ██████████████████████████████████████████ ██████████████████████████ (2) documents from the United States Attorney's Office related to any plea deals for Mr. Van Zandt; (3) all agreements between the United States Attorney's Office or Drug Enforcement Agency and Mr. Van Zandt; (4) Reports from the F.B.I. related to Mr. Ware's ████████████████████████ ████████████ and (5) Reports from a three month period discussing the conflict of interest in this case.  *Id.*  The very next day, a magistrate denied the motion for discovery, deciding Mr. Ware "has not identified a factual dispute that would entitle him to relief if resolved in his favor."  ROA.306-07.

Mr. Ware once again requested a discovery and a hearing after the government filed its reply briefing.  ROA.435-444.  The request for a hearing was denied the

---

[2] Mr. Van Zandt would receive a sentence of 60 months for a crime that had a mandatory minimum sentence of 10 years in prison, ████████████████████████████████████████     ROA.190.

3

same day.  The magistrate handling the case explained the court would hold a hearing "[i]f it is determined that an evidentiary hearing is necessary."  ROA.44.

Although the case had been referred to a magistrate judge,[3] no findings or recommendations where ever made.  Instead, on April 4, 2024, the District Court issued a memorandum order denying relief on all claims, denying a certificate of appealability, and denying the renewed motion for discovery and a hearing. ROA.463-477.  Mr. Ware timely filed notice of appeal.  ROA.106.

This Court previously granted a certificate of appealability on the conflict of interest claim, and noted that review of the District Court's denial of an evidentiary hearing doesn't require a certificate of appealability.  Doc. no. 56-2.

## II.    THE FACTS

### A.    After his arrest, Mr. Ware ████████████████████████

On May 27, 2015, Mr. Ware was arrested by FBI agents on the federal indictment filed days before. ROA.498. ███████████████████████

████  ██████████████████████████████

██████████  On May 28, 2015, Attorney Reed Prospere became attorney of record

---

[3] ROA.23, 79

4

for Mr. Ware, and Mr. Ware was released on bond.  ROA.529-30.  From that point

forward, until his subsequent arrest on April 17, 2019, ████████████████████

████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████  ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[4] In the three years that passed from date of Mr. Ware's guilty plea prior to his bond being revoked, ██████████

████████████████████████



Prior to consideration ███████████████████ considering his acceptance of responsibility, Mr. Ware's guideline sentencing range would have been 168-210 months, ████████████████████████████████████

6

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ However, ████████████████████████████████

████████████████████████████████████

### B.     A conflict of interest arises for Mr. Ware's attorney, and the result is that Mr. Ware loses his acceptance of responsibility.

On September 5, 2017, the DEA was investigating a known drug dealer when Charles Rover Van Zandt arrived at the apartment the DEA was surveilling, only to leave a short time later carrying a bright green bag.  ROA.162-66.  At the DEA's request, local police conducted a traffic stop during which Van Zandt attempted to escape, resulting in a fight between him and the stopping officers.  *Id.*  Eventually, Van Zandt was placed in custody, and police inventoried his car finding a kilogram of cocaine.  *Id.* Drug charges were filed in state court.

Van Zandt quickly bonded and was back dealing with the same cocaine supplier on September 8, 2017.  ROA.167-170.   Once again, Van Zandt met with the supplier inside of an apartment and left with a bag filled with suspected cocaine.  *Id.*  However, this time he was driving a car with a temporary license plate issued to

---

[5] The statutory sentencing range for the offenses of conviction was a maximum sentence of 20 years.  *Id.*

7

Adarrien Ware (Acacedric Ware's brother).  *Id.* The DEA did not follow or have Van Zandt stopped on this occasion; instead, they continued to surveil his supplier. *Id.*  The DEA did, however, make a video of Van Zandt leaving that showed the silhouette of another man in the car with Van Zandt.  ROA.183.  At Mr. Ware's punishment hearing, S.A. Hillman explained he could not identify the second man from this video footage because of its poor quality.  ROA.783.





On February 28, 2018, ███████████████████████████████

███████████████ Van Zandt had been "indicted in December 2017 in the

Eastern District of Texas for his involvement in a cocaine conspiracy." *Id.*;

ROA.184-191. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████





*Id.*

Events taking place after the February 28th interview suggests the government should have quickly identified Mr. Prospere's conflict of interest.  SA Hillman, who was the FBI Agent in charge of Mr. Ware, was contacted by the FBI in March of 2018 and notified that Mr. Ware was being accused as an accomplice of Van Zandt's. ROA.772-774.  ██████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Agent Hillman also testified that the U.S. Attorney's office might have received the initial report related to Mr. Ware's alleged involvement with Van Zandt, "because the U.S. Attorney's Office was dealing with the DEA."  ROA.806.  At this point, both SA Hillman, the DEA agents investigating Van Zandt, and certainly the U.S. Attorney's Office, who was currently prosecuting Mr. Ware, would have been aware that Mr. Prospere was representing both men. Once SA Hillman was told about the existence of a video, he decided to drive to the DEA office because he "didn't believe it."  *Id.* at 778.

10

After viewing the video, SA Hillman "couldn't tell if it was Ware or not." *Id.*

at 783. ███████████████████████████████████████████████████

███████████████████████████████████ Ms. Guy was the prosecutor

handling Ms. Ware's case, she would have been aware that Mr. Prospere was

representing Mr. Ware. ████████████████████████████████

████████████████████████████ ██████████████████████

███████████████████████████████████████████████████

███████████████████████████████████



On April 17, 2018, a week after his conflict was solidified, Mr. Prospere

withdrew from representing Mr. Ware, but he continued to represent Van Zandt in

his pending case. ROA. 185-191, 637. It is unclear if Mr. Prospere took any action

11

to protect Mr. Ware's interest during these intervening days.[8]  A conflict of interest

was cited as cause for Mr. Prospere's withdrawal.  *Id.*  The next day Judge Fitzwater

granted the motion to withdraw.  ROA.640.  On April 13, 2018, a warrant was issued

for Mr. Ware's arrest, and he was arrested on April 17, 2018.  ROA.640.  During his

arrest, ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████   █████████████████

████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[8] Mr. Prospere's affidavit, provided to the Government, does not discuss what action he took prior to his withdraw, and assumes that Van Zandt's version of events was truthful: "I was surprised to learn during the course of the interview that Ware and VanZandt were both involved in drug transactions together."



The result of ███████████ against Mr. Ware was that probation and the government argued he should lose his departure for acceptance of responsibility. *See* ROA.964-968. The guideline offense level changed from 168-210 months with points off for acceptance of responsibility to 235-293 months without the points off for acceptance. *Id.* ████████████████████████ ███████████████████████████████████ ███████████████████████

**C.    The sentencing hearing –** ██████████████████ ████████████████████████████████████

Because the surveillance video of Mr. Van Zandt's September 8, 2017, drug transaction was unhelpful in identifying the person traveling with him[9] the government relied heavily upon ████████████████████deny Mr. Ware acceptance of responsibility.

---

[9] *See* ROA.783, 803 (Agent Hillman's testimony concerning the vehicle).

After ████████████████████████████████████████

████████████████ the Court noted that the government's "perspective on why he's

not getting acceptance" was related to the "alligations of new criminal conduct ████

██████████████████████████ The defense's case turned to refuting

the idea that Mr. Ware was involved with unauthorized narcotics transactions while

on bond and challenging Van Zandt's credibility.

Van Zandt's attempt to flee from the police and subsequent struggle with

arresting officers was highlighted.  ROA.775-776.  Agent Hillman agreed there was

no other footage of Mr. Ware being involved in any transactions with Van Zandt,

despite the lengthy surveillance of Van Zandt's co-defendants.  ROA.778.  ████████

████████████████████████████████████████████████████████

████████ SA Hillman admitted he did not do any follow up investigation after

Mr. Ware's re-arrest.  ROA.789-90. Specifically, no investigation into Mr. Ware's

ability to purchase millions of dollars of narcotics was performed.  *Id.* ████████

14



SA Hillman discussed Mr. Ware's un-*Mirandized* custodial statement. 



███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

████████████

The government's questioning of SA Hillman confirmed that Mr. Ware only confessed to being present with Mr. Van Zandt after Agent Hillman falsely claimed a video proved his involvement in a drug transaction. ROA.815-18. During further questioning by the defense, ███████████████████████████████ ██████████████████████████████ showing it might not have been possible for Ware to be present at the drug deal on September 8, 2017. ███████████

The defense called long time FBI agent Dennis Brady who currently worked as a private investigator. ROA.839-848. The thrust of his testimony was that he had interviewed Ms. Brackens, who is Van Zandt's girlfriend, and that she confirmed Van Zandt was a violent man who would not have been afraid of Mr. Ware. *Id.* ████

████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

[10] Before the District Court, ██████████████████████████████████
█████████████ The motion was denied along with all other requests for discovery. ████████████

16

that she was present when Van Zandt first met his suppliers, and that she had never seen Mr. Ware deliver money to Van Zandt at their house. *Id.*







Finally, the defense called Adarrien Ware who explained that he owned a car lot, and that he would let Van Zandt and his brother borrow cars from time to time when they brought their cars to his lot for service.  ROA.896-901.  ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The Court then ruled on Mr. Ware's objection relating to the acceptance of responsibility departure under guideline § 3E1.1.  ROA.905.  The Court overruled the objection and found that the guideline would not apply because Mr. Ware had not withdrawn from criminal activity.  *Id.*  The Judge explained "[i]n making this ruling I don't have to rely ▮▮▮▮▮▮▮▮▮▮▮▮ The testimony of Agent Hillman is sufficient for the court to overrule this objection."  *Id.*  After further testimony from Mr. Ware and his family, the Court sentenced Mr. Ware to 235 months in prison, which was the low end of the sentencing range (without the departure for acceptance of responsibility).  The Court noted the reason for the sentence:

18

In my view the defendant's loss of acceptance of responsibility based on his continued criminal conduct has been adequately taken into account by the loss of the decrease in the advisory guideline range that he would have received had he not engaged in additional criminal conduct.



ROA.922.

**D.**

However, the lower courts repeatedly denied Mr. Ware's motions for discovery and requests for a hearing to develop the factual basis of claims related to Van Zandt

19

### E. District Court's Ruling.

The District Court assumed, "without deciding, that an actual conflict existed when pretrial counsel represented Van Zandt ███████████████████ ████████████████████████████████████████████████████████

ROA.469. However, the District Court held that an "adverse effect" could only be established by showing "some plausible alternative defense strategy or tactic" and that Ware could not make this showing. ROA.468-69. The Court also suggested that any adverse effect caused by counsel's conflict was cured by his withdraw from Ware's case. *Id.*

The District Court denied Mr. Ware's ineffective assistance of counsel claim related to the failure to object to the admission of Ware's illegally obtained statement because that statement was not obtained for the "*sole* purpose of enhancing his sentence." ROA.471. The Court also found Ware had not established a reasonable probability that the outcome of his sentencing proceeding would have been affected had his attorneys objected to the admission of his statement.

Assuming that Van Zandt had testified falsely ████████████████████ ██████████████████████████ the District Court found that his false testimony was not material, and suggested that Ware himself had introduced the false

20

testimony. ROA.474-75. The Court also denied Mr. Ware's request for discovery and an evidentiary hearing. ROA.475-76.

## SUMMARY OF THE ARGUMENT

During the pendency of Mr. Ware's prosecution his attorney also represented Charles Van Zandt. Prior to Mr. Ware's sentencing, ██████████████████ ████████████████████████████████████████████████████████████ ████████████████ An actual conflict of interest existed for the attorney because he simultaneously represented two men with diverging interest, and the carry over effect from this conflict was that Mr. Ware's bond was revoked and he was sentenced to years of additional prison time based on ████████████ Van Zandt, ████████████████████████████████████████████ ███████████████████████████████████ The result of the conflict is that Mr. Ware was denied Due Process of Law and his right to counsel under the Sixth Amendment. Finally, Mr. Ware argues, at a minimum, that the District Court abused its discretion by denying his motion without holding an evidentiary hearing.

## STANDARD OF REVIEW

This Court reviews *de novo* questions of law and mixed questions of law and fact. *See Carty v. Thaler*, 583 F.3d 244, 252–53 (5th Cir. 2009); *See also United States v. Sheperd*, 27 F.4th 1075, 1082 (5th Cir. 2022) ("We review ineffective-

21

assistance-of-counsel claims, like this one, as a mixed question of law and fact subject to de novo review.").  The Court "reviews a district court's refusal to grant an evidentiary hearing on a § 2255 motion for abuse of discretion." *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008) (holding that district court abused its discretion in failing to hold an evidentiary hearing).

ARGUMENT

**I.     MR. WARE'S RIGHT TO DUE PROCESS AND RIGHT TO COUNSEL WERE VIOLATED BECAUSE HIS ATTORNEY LABORED UNDER AN ACTUAL CONFLICT OF INTEREST THAT ADVERSELY IMPACTED HIS CASE.**

**A.     The Law.**

The Sixth Amendment ensures a criminal defendant the right to counsel. U.S. Const. amend. VI. This right includes the right to counsel who is not operating under an actual conflict of interest. *Glasser v. United States*, 315 U.S. 60 (1942); *Holloway v. Arkansas*, 435 U.S. 475 (1978); *Cuyler v. Sullivan*, 446 U.S. 336 (1980); *Wood v. Georgia*, 450 U.S. 261 (1981); *Burger v. Kemp*, 483 U.S. 776 (1987); *Mickens v. Taylor*, 535 U.S. 162 (2002). "Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 688 (1984) (*citing Cuyler v. Sullivan*, 446 U.S. 336 (1980)).

22

Although this claim is brought under the Sixth Amendment's right to effective assistance of counsel, the standard for relief is more relaxed when an attorney labors under an actual conflict of interest. "The *Cuyler* standard applicable when a criminal defendant alleges that counsel's performance was impaired by an actual conflict of interest differs substantially from the *Strickland* standard generally applicable to Sixth Amendment ineffectiveness claims." *Perillo v. Johnson,* 205 F.3d 775, 781 (5th Cir. 2000). (*citing Strickland*, 466 U.S. at 693). Unlike a *Strickland* analysis, requiring a showing of deficient performance and prejudice, "*Cuyler*, on the other hand, permits a defendant who raised no objection at trial to recover upon a showing that an actual conflict of interest adversely affected counsel's performance." *Id.* (citations omitted).

The Supreme Court held that to establish a violation of the Sixth Amendment right to counsel on the basis of a conflict of interest, a defendant must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *See Sullivan*, 446 U.S. at 348-49. "An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781.

23

Further, once an adverse effect is established, there is no need to demonstrate additional prejudice to obtain relief. *See Sullivan*, 446 U.S. at 349-50. This is because "[t]o determine the precise degree of prejudice sustained" as a result of conflicted counsel is "is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser*, 315 U.S. at 75-76. This Court explained the relevant standard in *Perillo*:

> *Cuyler*'s adverse effect standard is set intentionally lower than *Strickland*'s actual prejudice standard. Under *Strickland*, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Under *Cuyler*, the focus is upon whether the actual conflict burdening counsel's performance had an actual and adverse effect on counsel's performance. Once it is established that there was an adverse effect on counsel's performance, prejudice, in terms of an effect on the outcome of the defendant's trial, is presumed. *See Beets*, 65 F.3d at 1265.

205 F.3d at 806.[11] "Assuming the defendant establishes an actual conflict that adversely affected counsel's performance, prejudice is presumed without any further inquiry into the effect of the actual conflict on the outcome of the defendant's trial."

---

[11] The adverse effect inquiry is "[a] lighter lift for defendants" than the general ineffective assistance prejudice test. *See Sheperd*, 27 F.4th at 1083.

24

*Id.* at 781-82.  Finally, a conflict adversely affecting a defendant's case often results from a failure in the "duty of loyalty"[12] and is often identified by "what the advocate finds himself compelled to *refrain* from doing. . . ."[13]

**B.    The District Court's assumption that an actual conflict existed is correct.**

The District Court assumed, "without deciding, that an actual conflict existed when pretrial counsel represented Van Zandt ███████████████████████ ███████████████████████████████████████████████████████████ ██████████ The District Court's assumption is correct.  Of course, the conflict persisted as counsel continued to represent Van Zandt██████████████████ ████████████████████

An actual conflict existed because Mr. Prospere compromised his duty of loyalty to Mr. Ware when Mr. Prospere allowed ████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ This Court focuses "upon the 'guiding principle in this important area of Sixth

---

[12] *Nealy v. Cabana*, 782 F.2d 1362, 1365 (5th Cir. 1986) ("Leo Nealy established that his counsel's conflicting interests adversely affected his active representation of and duty of loyalty to Leo.").

[13] *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978).

Amendment jurisprudence,' which is whether counsel's allegiance to the accused was compromised by competing obligations owed to other clients." *Perillo*, 205 F.3d at 798. This happened in Mr. Ware's case. ████████████████████



████████████████████ The same is true of Mr. Prospere's continued representation of Van Zandt after he withdrew from representing Mr. Ware. ████

This Court looks to the relevant ethical standards in determining if a conflict exists. *Perillo*, 205 F.3d at 801 (discussing both the ABA guidelines and Texas Disciplinary Rules of Conduct). A conflict can arise by taking actions adverse to former clients:

---

14 ████████████████████████████████████

For example, ABA Model Rule of Professional Conduct 1.9 contains a
blanket provision prohibiting an attorney from accepting subsequent
employment adverse to the interests of a former client in the same or a
substantially related matter. See ABA MODEL RULE OF
PROFESSIONAL CONDUCT 1.9 & cmts. 1, 6, & 10 (distinguishing
between the duty of confidentiality and the duty to refrain from
undermining the work product produced for the former client or
advocating for an interest that is materially adverse to the former
client). Similarly, Texas Disciplinary Rule of Professional Conduct 1.09
prohibits subsequent employment in a matter adverse to the former
client, not just when the subsequent representation will probably
involve the disclosure of confidential information learned in the course
of the former representation, but also when counsel's representation of
the second client will call the validity of the lawyer's services or the
work product produced for the former client into question, or when
counsel will be representing adverse interests in the same or a
substantially related matter. TEXAS DISCIPLINARY RULES OF
PROFESSIONAL CONDUCT 1.09(a)(1–3).

*Id.*

Similarly, the Texas Rules of professional conduct prohibit representation

when that representation "reasonably appears to be or become[s] adversely limited

by the lawyer's or law firm's responsibilities to another client . . . ." TX ST RPC

Rule 1.06 (b)(2). "If a lawyer has accepted representation in violation of this Rule,

or if multiple representation properly accepted becomes improper under this Rule,

the lawyer shall promptly withdraw from one or more representations to the extent

necessary for any remaining representation not to be in violation of these Rules." *Id.*

at (e).[15]  The ABA Model Rules of Professional Conduct explain that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client."  See ABA MODEL RULE OF PROFESSIONAL CONDUCT 1.7.

Mr. Prospere developed a conflict when one client took a position directly adverse to another, and that conflict of interest persisted throughout Mr. Ware's criminal case because Mr. Prospere continued to represent Van Zandt who was taking an adverse position against Mr. Ware in the very case in which Mr. Prospere had previously represented Mr. Ware.  Although it appears the government, through the DEA, FBI, and United States Attorney's Office either understood, or should have understood, the great potential for a conflict of interest arising ███████████ ████████████████████████████████████████████████████████████ clear that anyone alerted Mr. Prospere to the possible conflict prior to ███████ ██████████████████ Indeed, Mr. Prospere states he was unaware of the conflict until ████████████████████████████████████████████████████████████

---

[15] See also TX ST RPC Rule 1.06 (d) ("A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties to the dispute.")

████████████████████████████████████

████████████████████████████████████

representing Mr. Ware in that pending case. ROA.354. The conflict in this case could have been prevented had someone notified Mr. Prospere and asked him to withdraw from both cases prior to ███████████████

### C.    Mr. Ware was adversely effected by his counsel's conflict.

The District Court held there is only one way to establish an adverse effect:

> "An 'adverse effect' requires proof that '"some plausible alternative defense strategy or tactic" could have been pursued but was not because of the actual conflict impairing counsel's performance.'" *Barbee v. Davis*, 660 Fed. Appx. 293, 313 (5th Cir. 2016) (per curiam).
>
> . . .
>
> Ware has not shown that there was any "plausible alternative defense strategy or tactic" that could have been, but was not, pursued because of pretrial counsel's alleged conflict of interest.

ROA.468-69. The District Court took a limited view of the ways in which an adverse effect can be established and ignored the Supreme Court's admonition that "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests" which "[g]iven the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely

to give rise to conflicts . . . [resulted in a] fairly rigid rule of presumed prejudice for conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 692 (1984).

The District Court was correct that the unpublished *Barbee* decision stated that an adverse effect "requires" a certain type of proof, but the *Barbee* use of the word "requires" appears to be in error. *Barbee* cited *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000), for this idea. But *Perillo* states an "'Adverse effect' may be established with evidence that 'some plausible alternative defense strategy or tactic' could have been pursued, but was not because of the actual conflict impairing counsel's performance." 205 F.3d at 781. Indeed, Courts have specifically recognized other types of harm.

It is established law that the Sixth Amendment's right to conflict-free representation is violated when an attorney plea bargains for one client to testify against another. *Holloway v. Arkansas*, 435 U.S. 475 (1978); *United States v. Hughes*, 817 F.2d 268, 270-71 (5th Cir. 1987); *United States v. Martinez*, 630 F.2d 361, 362-63 (5ᵗʰ Cir. 1980); *Stephens v. United States*, 595 F.2d 1066, 1066-70 (5th Cir. 1979); *United States v. Alvarez*, 580 F.2d 1251, 1257 (5th Cir. 1978). Other courts allow a defendant prove his conflict claim by showing a "lapse in representation." *See United States v. Williams*, 372 F.3d 96, 106 (2d Cir. 2004) (conflicted counsel failed to engage in plea bargain negotiations). Further, all that

30

must be shown is some *plausible* adverse effect. *United States v. Abner*, 825 F.2d 835, 844-45 (5th Cir. 1987).

Mr. Ware argues that the conflict of interest in his case had an actual and adverse effect on counsel's performance.  Instead of putting Mr. Ware's interest first, counsel was ███████████████████████████████████████████████ ████████████████████████████████████ This took place while Mr. Ware was still being represented by Mr. Prospere.  Of course, we must assume that Mr. Prospere ████████████████████████████████████████████████ representation of Mr. Ware when he allowed Van Zandt to provide damning information against him.  There is no indication that Mr. Prospere took any action to protect Mr. Ware before or after the meeting ████████████ such as advocating that Van Zandt ███████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████ Instead, Mr. Prospere decided that "Ware had caused the problem and conflict" and withdrew from Mr. Ware's case on the very day he was re-arrested, leaving Mr. Ware without counsel for several days.  ROA.331; 502.  Further, counsel continued to represent Mr. Van Zandt through his sentencing, ████████████████████████████████████ ████████████████████████████████ The result of this conflict is that Mr.

31

Ware's minimum sentencing guideline was increased from 168 months to 235 months, or close to six years. ████████████████████████████

████████████████████████████████

But the District Court suggests that Ware is unable to prove a conflict because "[a]t the time of the sentencing hearing, pretrial counsel was not operating under an actual conflict: he had withdrawn from the case and was no longer Ware's attorney." ROA.469 (citing *Guidry v. Lumpkin,* 2 F.4th 472, 491 (5th Cir. 2021) (noting that the petitioner did not identify "clearly established law that the conflict of interest of counsel who withdraws can form the basis of an ineffectiveness claim that justifies habeas relief."). It is correct that, in *Guidry*, this Court stated "[n]or does [Guidry] point to clearly established law that the conflict of interest of counsel who withdraws can form the basis of an ineffectiveness claim that justifies habeas relief" before discussing the merits of a conflict claim. *Guidry*, 2 F.4th at 491. However, *Guidry* involved a state habeas petitioner, meaning that the restrictions of 28 U.S.C. § 2254 (d) applied.[16]  As a federal petitioner, Mr. Ware does not have to satisfy the standards of § 2254, and this Court's review is *de novo.*

_____

[16] 28 U.S.C. § 2254 (d) states: **"**An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

More importantly, the idea that withdrawal of conflicted counsel prevents a finding of adverse effect is refuted by this Court's decision in the *Shepherd* cases, which Mr. Ware addressed before the District Court, but which the District Court failed to address.   ROA.52-55, 66-68.   The *Sheperd* cases explain that a Sixth Amendment violation based upon conflicted counsel can arise even when the conflict arises pre-trial, and the conflicted counsel withdraws from representation prior to trial.   *See United States v. Sheperd*, 27 F.4th 1075 (5th Cir. 2022); *United States v. Sheperd*, 44 F.4th 305 (5th Cir. 2022).

Sheperd was represented in federal court by Attorney Akpaffiong.   Two months after he signed onto the fraud case, Attorney Akpaffiong, █████████ █████ met with the government and another client:

> Akpaffiong met with FBI agents and a federal prosecutor to discuss Sheperd's trial. But he was not there acting on Sheperd's behalf. Akpaffiong was there to act on another client's behalf—Okechukwu Okpara. Akpaffiong had helped Okpara secure a plea deal related to healthcare fraud in a different district court almost a year before. So why did Okpara need Akpaffiong at the meeting? Because Okpara was Sheperd's friend and business associate—a relationship the Government wanted to exploit by calling Okpara as a

States; or **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

witness *against* Sheperd.

*Sheperd*, 27 F.4th at 1080-81.   Unlike Ware's case, however, the Government pointed out the conflict to Attorney Akpaffiong, who none-the-less persisted as Sheperd's attorney: "If representing both Sheperd and Okpara at the same time sounds zany to you, then you wouldn't be alone. The Government thought it sounded zany, too. In fact, it even pointed out to Akpaffiong that he had an obvious conflict." *Id.* ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

Just like Ware's case, the conflicted counsel withdrew from representation and was replaced prior to trial.  *Id.*[17] Despite the fact that counsel withdrew, this Court had little trouble in finding an unconstitutional conflict of interest.  The Court explained that the Sixth Amendment's right to counsel is "no hollow guarantee. The Counsel Clause does not countenance empty suits; it requires '*effective* assistance of counsel'—the presence of competence and absence of conflicts."  *Id.* at 3 (footnotes

---

[17] In Mr. Ware's case, counsel withdrew prior to the sentencing hearing.

34

omitted).  The Court also reaffirmed the standards related to these specific subsets of Sixth Amendment claims:

> That two-pronged test has a special application when a defendant argues that her representation was infected with a conflict of interest. One of the most indispensable duties that any counsel owes his client is the duty of loyalty. Counsel breaches that duty when he labors under an actual conflict of interest. And if he breaches the bedrock duty of loyalty, then his representation will fall below the objective standard of reasonableness that the Constitution requires.

*Id.* at 1083.  And it cannot be doubted that counsel's duty of loyalty to Mr. Ware was breached in this case when he assisted Van Zandt ███████████████ ██████████████████████████████████████████████████

Although the record was not sufficiently developed in the *Sheperd I* case, the Court noted "some circumstantial evidence already points" towards Sheperd's right to counsel being violated: "The Government agreed to a reduced sentence for Okpara based on his cooperation in prosecuting Sheperd. And that deal was enabled, through and through, by Akpaffiong." *Id.* at 4. ███████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████

35

*Shepherd I* is important not only because of its finding of a potential conflict despite the withdrawal of conflicted counsel prior to trial, but also because the trial court in that case had already attempted to remedy the effects of the conflict. "The district court ultimately excluded Okpara from testifying." *Sheperd I*, 27 F.4th at 1082. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ The adverse effect here appears more concrete than the one identified in *Shepherd*.

Other cases found violations of the right to counsel despite conflicts which arose prior to trial. In *Baty v. Balkcom*, two defendants with conflicting defenses were represented by one counsel, but Baty's counsel was replaced shortly before trial by different counsel from the same office. 661 F.2d 391, 392-393 (5th Cir. 1981). This Court had little trouble in finding an actual conflict of interest adversely effecting Baty's case where the new counsel was not sufficiently prepared for trial. *Id.* at 396.[18] In *Baty,* this Court recognized that because counsel's conflict might

---

[18] In *Baty,* this Court, discussing *Cuyler* and *Holloway*, stated the cases "lend[] support to holding that the Court did not mean to impose a standard requiring proof of adverse effect on counsel's representation." *Id.* at 396. A close reading suggests this Court simply meant that concrete proof of an adverse effect is not required, instead, the question is whether there was some plausible adverse effect on counsel's representation. *See Abner*, *supra*.

36

have effected the plea bargain process, "[t]he conflict of interest before trial alone would be sufficient to grant Baty's habeas petition." *Id.* at 397.[19]  In Mr. Ware's case, counsel free from obligations to Van Zandt might have take steps to prove to the government that Van Zandt was not worthy of belief, further investigated the matter, ████████████████████████████████████████████████ ███████████████████████████ but Mr. Prospere failed to take these steps because "[in his] mind Ware had caused the problem and the conflict. . . ." ROA.331.

This Court should also consider that Mr. Prospere assuredly possessed ██████████████████████████████████████████████ In *United States v. Infante*, where this Court remanded for a hearing to determine the presence of an adverse effect at trial, this Court noted that "[w]hether a conflict of interest exists depends on a number of factors, including, but not limited to, whether the attorney has confidential information that is helpful to one client but harmful to another; whether and how closely the subject matter of the multiple representations is related; how close in time the multiple representations are related; and whether the prior representation has been unambiguously terminated."  404 F.3d 376, 392 (5th Cir.

---

[19] *See also Holloway*, 435 U.S. at 490 ("[I]n this case it may well have precluded defense counsel for Campbell from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable.").

2005).[20]  These factors all apply in favor of finding a conflict in Mr. Ware's case. Mr. Prospere represented Mr. Ware and Van Zandt at the same time, related to the same subject matter, and before he terminated his representation of Mr. Ware.  It is likely that he also possessed confidential information about Mr. Ware, however, because no hearing was held in this matter, we do not know how that information

██████████████████████████████████████████████

The District Court also failed to consider the carry over effect from Mr. Prospere's dual representation of Mr. Ware and Van Zandt.  In *Sanders v. Ratelle*, the Ninth Circuit considered the result when a conflicted counsel represented the defendant at an initial trial, the results of which handcuffed subsequent counsel at retrial. 21 F.3d 1446, 1454 (9th Cir. 1994).  There, the issue was that counsel's conflict of interest during the first trial resulted in him failing to call an exculpatory witness.  The Ninth Circuit explained second attorney's "conduct of the case must be reviewed in the context of the first trial and what [the defendant's] first attorney did therewith." *Id.*  The Court found an adverse effect where "[t]he carry-over effect of the first attorney's refusal to call Xavier as a witness during the first trial

---

[20] *See also Perillo v. Johnson*, 205 F.3d at 798 (5th Cir. 2000) ("A conflict of interest may exist by virtue of the fact that an attorney has confidential information that is helpful to one client but harmful to another.")

prejudiced [the defendant] at the second trial by making it difficult to pursue that defense." *Id.* This carry-over effect analysis applies straightforwardly to Mr. Ware's case. ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ Further, after the conflict, defense counsel apparently took no steps to try and remedy the situation or protect Mr. Ware from Van Zandt's action, which resulted in a lapse in representation. *See United States v. Williams*, 372 F.3d 96, 106 (2d Cir. 2004) (finding a lapse in representation where counsel failed to make any significant effort to negotiate a plea ████████████████████████████This course of action only compounded the effect of the conflict.

This Court should find that Mr. Ware has proven a conflict interest that adversely effected his case in violation of the United States Constitution.

**D.    The Remedy: Mr. Ware should be sentenced free from the effects of the conflict.**

In *Shepherd*, after this Court remanded to the district to hold an evidentiary hearing and the district court found the existence of an adverse effect, it was left for this Court to craft the appropriate remedy. *United States v. Sheperd*, 44 F.4th 305, 306 (5th Cir. 2022). At the governments request, this Court discussed *Lafler v.*

*Cooper*, where the Court explained that "Sixth Amendment remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Id.* (*citing Lafler v. Cooper*, 566 U.S. 156, 170 (2012)) (internal quotation marks omitted).   "The remedy must 'neutralize the taint' of [the] constitutional violation, but not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution." *Id.* (internal quotation marks omitted).  The proper remedy in *Sheperd II* was "to VACATE Sheperd's convictions and REMAND for a new trial." *Id.* at 306-307.

In *Sheperd II,* the Court stated, "[f]or example, when a defendant decline[s] a plea offer as a result of ineffective assistance of counsel and then receive[s] a greater sentence as a result of trial, then the remedy could involve resentencing or ordering the Government to reoffer the plea deal, depending on the circumstances." *Id.* (*citing Lafler*, 566 U.S. at 170–71 (internal quotation marks omitted).  As discussed in the fact section, prior to the conflict arising in this case, Mr. Ware would have received a three-level departure pursuant to U.S.S.G. § 3E1.1.  His guideline sentencing range would have been 168-210 months in prison, and was increased to 235-293 months in prison as a result of ███████████████    █████████████████████

███████████████████████████████████████████████

40

At a minimum, to remedy this situation, Mr. Ware should be resentenced free

from any ███████████████████████ He should be granted the three-

level departure pursuant to U.S.S.G. § 3E1.1, ████████████████████

███████████████████████

## II.  THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING THE MOTION WITHOUT HOLDING A HEARING.

At a minimum, this Court should remand to the district court for a hearing on

the issue of adverse effect.[22]  The District Court held that a hearing was not required

because "Ware has failed to present independent indicia in support of the likely merit

of his claims, and the court is left to conclude that he is seeking to use an evidentiary

hearing as a fishing expedition to validate his allegations."  ROA.104.  This Court

reviews the District Court's denial of a hearing for an abuse of discretion.  *United

States v. Cavitt*, 550 F.3d 430, 441 (5th Cir. 2008).

In *Cavitt,* this Court concisely described the relevant analysis:

> As noted above, the applicable standard of review is "abuse of
> discretion." To establish abuse of discretion, a petitioner must present

---

[21] *See also United States v. Williams*, 372 F.3d 96, 111 (2d Cir. 2004) (proper remedy for conflicted pretrial counsel was resentencing, and trial judge was tasked "to reconstruct the likely result Williams would have obtained had he not had conflicted counsel.").

[22] In his supplemental briefing before the district court, Mr. Ware argued that an evidentiary hearing would be proper in this case.  ROA.66; *see also* ROA.155

"independent indicia of the likely merit of [his] allegations." *Edwards,* 442 F.3d at 264. Once such independent evidence is presented, "[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir.1992).

*Id.* at 442.[23]   In *Cavitt,* the Court explained that because "[t]he record does not 'conclusively show that [Cavitt] is entitled to no relief,' . . . the court below erred by failing to hold an evidentiary hearing prior to denying [Cavitt's] § 2255 motion." *Id.* (footnote omitted).[24]

Once again, *Shepherd I* is instructive. There, this Court remanded "for an evidentiary hearing on whether Sheperd's lawyer's conflict of interest adversely affected his representation." *Sheperd*, 27 F.4th at 1080. An action that would be proper here if this Court believes there is insufficient evidence to conclude whether or not an adverse effect existed in this case. In *Sheperd I,* remand for an evidentiary hearing was proper because "questions abound about what advice [pretrial counsel] gave or did not give Sheperd, and what he did or did not do on her behalf." *Id.* at

---

[23] "Rule 8 of the Rules Governing Section 2255 Proceedings provides that '[i]f the motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted ... to determine whether an evidentiary hearing is warranted." *Cavitt*, 550 F.3d at 441–42.

[24] In *United States v. Reed*, this Court held a hearing was required because the movant's "affidavit was sufficient to prove his allegation and was not speculative, conclusory, plainly false, or contradicted by the record. . ."719 F.3d 369, 374 (5th Cir. 2013).

1084.  Further, the record was silent as to counsel's *motives* for actions he did or did not take.  *Id.*  The same is true here.  Because no hearing was held in the district court, the record is silent about what actions counsel took to protect Mr. Ware's interest, whether he used confidential information to benefit Van Zandt, or what his motives were in continuing to represent Van Zandt after his conflict arose.

"Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial."  *Cuyler*, 446 U.S. at 348.  Mr. Ware was not given this opportunity, and this Court should, at a minimum, remand for an evidentiary hearing on this issue.

## PRAYER FOR RELIEF

Mr. Ware requests that this Court reverse the district court's ruling on his conflict of interest claim and remand his case for resentencing free from the adverse effect of his attorney's conflict.  In the alternative, he requests that the Court hold the District Court erred in denying his § 2255 motion without holding a hearing.

Respectfully submitted,

43

/s/ Jonathan David Landers
Jonathan Landers
917 Franklin Suite 300
Houston, TX 77002

Jlanders.law@gmail.com

(713) 685-5000 (work)

### CERTIFICATE OF SERVICE

I certify that a copy of this documents was served on all counsel of record via ECF on the April 17, 2025.

/s/ Jonathan David Landers
Jonathan Landers

### CERTIFICATE OF COMPLIANCE

1.    This brief complies the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 10,004 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a

proportionally spaced typeface using Microsoft® Office Word 2010 in 14-Point Times New Roman font.

/s/ Jonathan David Landers
Jonathan Landers

Date: April 17, 2025